# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO RAMIREZ GUZMAN,<br><br>                                    Petitioner,<br><br>v.<br><br>RAYMOND MADDEN, Warden,<br><br>                                    Respondent. | Case No.:  17-CV-982-CAB(WVG)<br><br>**(1) REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(2) ORDER DENYING REQUEST FOR EVIDENTIARY HEARING** |

Petitioner Sergio Ramirez Guzman ("Petitioner" or "Guzman"), a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Bernardino Superior Court[1] conviction in case number FSB

---

[1] A petition for writ of habeas corpus may be filed in the United States District Court of either the judicial district in which the petitioner is presently confined or the judicial district in which he was convicted and sentenced. *See* 28 U.S.C. § 2241(d); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 497 (1973).  Petitioner is presently confined at California State Prison, Centinela, located in Imperial County, which is within the jurisdictional boundaries of the United States District Court for the Southern District of California.  *See* 28 U.S.C. § 84(d).

1105005. (Pet. at 1, ECF No. 1.)[2]  He also requests an evidentiary hearing. (*Id.* at 13.) The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the lodgments, the Traverse and all the supporting documents submitted by both parties. For the reasons discussed below, the Court **DENIES** Petitioner's request for an evidentiary hearing and **RECOMMENDS** the Petition be **DENIED**.

# I. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:[3]

Prosecution Evidence

Twice when Doe 1 was 10, Guzman had sexual intercourse with her. On one of those occasions, Guzman brought her to his bed, took off her shorts and underwear, told her to get on top of him, and put his penis in her vagina. Guzman's girlfriend, who had been lying next to him sleeping, woke up and told him to stop, but he did not. Guzman also once put his fingers in Doe 1's vagina.

When Doe 2 was eight and she, Guzman, and Guzman's girlfriend were lying in bed, Guzman told his girlfriend he wanted to have sex with

_____

[2]  Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

[3]  In a footnote preceding the factual summary, the appellate court stated: "To preserve the confidentiality of the Doe victims' identities, our summary omits some details, which, while superficially relevant to the issue raised on appeal, are not critical to our analysis. Our summary further omits the facts underlying Guzman's conviction for making criminal threats, as Guzman has not challenged this conviction on appeal." (Lodgment No. 6 at 3 n.2.)

Doe 2. A little while later, Guzman put his penis into Doe 2's vagina, causing Doe 2's vagina to bleed. Although Guzman's girlfriend told him to stop, she did not do anything to make him stop. On another occasion, while Doe 2 was lying in bed with Guzman and Guzman's girlfriend, Guzman put his hand under Doe 2's clothes and inside Doe 2's vagina.

Doe 1's and Doe 2's accounts were corroborated by the testimony of Guzman's girlfriend and by prior statements Doe 1 and Doe 2 made during police and forensic interviews. [Footnote 3: Guzman's girlfriend was also arrested and charged in this case. She pleaded guilty to two counts of child abuse in exchange for a six-year prison sentence.] Their accounts were also corroborated by medical evidence showing significant bruising to Doe 1's hymen, multiple instances of penetrating trauma to Doe 1's genitals, and significant redness and irritation surrounding Doe 2's labia and hymen.

Defense Evidence

Guzman denied having sexual intercourse with Doe 1 and Doe 2. He also denied any interest in having sexual intercourse with little girls. He stated he was not present when the molestations occurred and believed his girlfriend committed the molestations with another man. To support his defense, two of his daughters and two of his nieces testified he had never engaged in inappropriate sexual conduct with them. They also testified he was a truthful, honest and good person.

(Lodgment No. 6 at 3-4.)

## II.     PROCEDURAL BACKGROUND

On May 4, 2014, Guzman was charged by amended information with three counts of engaging in sexual intercourse with a child 10 years of age or younger (Cal. Penal Code § 288.7(a)) (counts one, two and four); two counts of sexual penetration of a child 10 years of age or younger (Cal. Penal Code § 288.7(b)) (counts three and five); three counts of committing a lewd act upon a child (Cal. Penal Code § 288(a)) (counts six, seven and eight); one count of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)) (count nine); and one count of making a criminal threat (Cal. Penal Code § 422) (count ten). (Lodgment No. 2, vol. 1 at 178-86.) The alleged victim in counts two, four, five, six and seven was Jane Doe 1, the alleged victim in counts one, three and eight was Jane Doe 2,

and the alleged victim in counts nine and ten was Mayra Jimenez, mother of Jane Does 1 and 2. (*See id.*)  It was further alleged in the amended information that, as to counts six, seven and eight, Guzman had committed the offenses against multiple victims (Cal. Penal Code §§ 667.61(b) & (e)).  (Lodgment No. 2, vol. 1 at 183-85.)

On May 28, 2014, a jury found Petitioner guilty of counts one through eight, and count ten.  The jury further made true findings that Guzman committed counts six through eight against multiple victims.  The jury found Petitioner not guilty of count nine, assault with a deadly weapon.  (Lodgment No. 2, vol. 2 at 280-92, 318-20.)  On August 1, 2014, the trial court sentenced Petitioner to 105 years-to-life in prison.  (*Id.* at 338-48.)

Petitioner appealed his conviction to the California Court of Appeal.  (*See* Lodgment No. 3.)  He argued on appeal that the trial court erred in denying his request to introduce evidence of his character and reputation for not molesting children.  (*See id.* at 12-18.)  On December 24, 2015, the appellate court affirmed the judgment in a reasoned opinion. (Lodgment No. 6.)  Guzman then filed a petition for review in the California Supreme Court, raising the same issue.  (Lodgment No. 7.)  The petition was denied without comment or citation on March 9, 2016.  (Lodgment No. 8.)

On February 6, 2017, Guzman filed a petition for writ of habeas corpus in the California Supreme Court.  (Lodgment No. 9.)  In the petition, Guzman claimed he received ineffective assistance of trial counsel.  (*See id.* at 3-7.)  On March 15, 2017, the court denied the petition with an order stating: "The petition for writ of habeas corpus is denied.  (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474; *In re Swain* (1949) 34 Cal. 2d 300, 304.)"  (*See* Lodgment No. 10.)

Guzman filed the instant federal petition for writ of habeas corpus in this Court on May 11, 2017.  (ECF No. 1.)  Respondent filed an Answer and Memorandum of Points and Authorities on September 27, 2017.  (ECF No. 7.)  Petitioner filed a Traverse on November 2, 2017.  (ECF No. 10.)

/ / /

/ / /

4

### III.   SCOPE OF REVIEW

Guzman's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record."  *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id*.  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable."  *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for

the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## IV. DISCUSSION

Guzman raises two claims in his Petition: (1) he received ineffective assistance of counsel, in violation of this Sixth Amendment rights, and (2) the trial court erred in preventing testimony of his good character. (*See* Pet. at 6-15, 17-22, ECF No. 1.) Respondent argues Petitioner's ineffective assistance of counsel claims must be denied because the allegations are conclusory and Petitioner has failed to establish the state court's decision was contrary to, or an unreasonable application of, clearly established law. (*See generally*, P. & A. in Supp. Answer at 15-19, ECF No. 7-1.) Respondent fails to address Petitioner's second claim.

## A. Ineffective Assistance of Counsel

In claim one, Petitioner argues trial counsel was ineffective in a number of ways: failing to investigate and obtain evidence, failing to obtain and introduce evidence of a videotape and cellphone records, failing to call his landlord's wife as a witness, failing to present DNA evidence, and failing to investigate and object to SART evidence. (*See generally* Pet., ECF No. 1; Traverse, ECF No. 10.)

Guzman raised these claims in his petition for writ of habeas corpus filed with the California Supreme Court. As noted above, the court denied the petition with citation to *People v. Duvall* (1995) 9 Cal. 4th 464, 474 (1995) and *In re Swain* (1949) 34 Cal. 2d 300, 304 (1949). (*See* Lodgment No. 10.) These citations indicate a denial for failure to "state fully and with particularly the facts on which relief is sought." *Duvall*, 9 Cal. 4th at 474; *In re Reno*, 55 Cal. 4th 428, 482 (2012); *see also Curiel v. Miller*, 830 F.3d 864, 871 (9th

Cir. 2016) (en banc) (concluding that citations to *Duvall* and *Swain* demonstrate that the petition was deficiently pleaded). Accordingly, because this claim was not denied on their merits, the section 2254(d) standard of review does not apply to them. *See Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002). When "there is no state court decision on [the merits of the constitutional violation alleged] to which to accord deference," courts review the claim de novo. *Pirtle*, 313 F.3d at 1167; *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004); *Nulph*, 333 F.3d at 1057.

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. He must also show he was prejudiced by counsel's errors. *Id*. at 694. Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993). Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 686-87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Strickland,* 466 U.S. at 687.

First, Guzman contends defense counsel failed to conduct an adequate pretrial investigation and failed to obtain information from his previous defense attorney, who had

represented him at the preliminary hearing. (Pet. at 7, ECF No. 1.) Counsel has a duty to conduct reasonable investigations or to make a reasonable decision that investigation is unnecessary. *Strickland*, 466 U.S. at 691. A decision not to investigate must be assessed for reasonableness under the circumstances at the time, applying a "heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Strickland*, 466 U.S. at 690-91). Here, Petitioner fails to provide specific facts regarding what defense counsel should have done but did not do when investigating his case prior to trial. Likewise, Guzman fails to specify what evidence defense counsel could have gathered but failed to gather from his previous attorney. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Thus, to the extent Petitioner fails to offer specific allegations about what counsel allegedly did not do with regard to his pretrial investigation, he has not established an ineffective assistance of counsel claim. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *Jones v. Gomez*, 66 F3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations of ineffective assistance of trial counsel do not entitle petitioner to relief).

Next, Petitioner argues defense counsel failed to obtain evidence that would "exonerate him of all charges." (Pet. at 8, 14, ECF No. 1; *see also* Traverse at 3, 8, ECF No. 10.) Specifically, he maintains that counsel failed to obtain video from a motel where he claims to have "spent the night of the alleged crime." (*See id*.) Guzman's allegation is fatally conclusory because Petitioner has not established that such a videotape exists or what it would demonstrate. Guzman offers nothing to support his claim beyond his own self-serving and conclusory allegations. Petitioner does not even specify the date(s) or time(s) he might have been captured on a motel's video surveillance. He also fails to specify at what motel the video was purportedly captured and fails to allege that, assuming there is such a videotape, it would establish his whereabouts for the entire night (or nights) in question. He offers nothing but his own speculation. As such, Guzman has not met his burden of showing that counsel's failure to obtain the alleged videotape constituted

deficient performance nor has he demonstrated the evidence would have proven exculpatory. *See Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000) (explaining that unsupported speculation and conclusory allegations of ineffective assistance of counsel are not sufficient to show either deficient performance or prejudice).

Guzman also argues defense counsel was ineffective in failing to obtain cellphone records which would have "demonstrated from where he was making a number of calls he made [on the] afternoon and night" of the alleged crime. (Pet. at 8, ECF No. 1.) Like Petitioner's claim regarding the alleged videotape, this allegation is conclusory and speculative. Guzman provides no evidence of what the cellphone records would have shown, much less how the records would have established his precise whereabouts. Even assuming his cellphone records could provide evidence as to Guzman's general location, he offers nothing to show that they would have supported is testimony that he was not present when the October 29, 2011 incident, or any of the other prior incidents, took place. Therefore, Petitioner has failed to establish that defense counsel's performance was deficient and further failed to show prejudice. *See Jackson*, 211 F.3d at 1155.

Guzman next contends trial counsel was ineffective in failing to call the wife of his landlord, German Perez, to testify.[4] He claims Perez's wife, whom he does not name, knew that another man was at his apartment with Jimenez on the night one of the incidents of abuse took place. Guzman suggests that Perez's wife could have therefore helped establish that he was not the perpetrator and that the girls were molested by someone else. (Pet. at 8-9, 14, ECF No. 1; *see also* Traverse at 7-8, ECF No. 10.) To establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witnesses' testimony created a reasonable probability that the jury would have

---

[4] In his Traverse, Petitioner also claims defense counsel was ineffective in failing to object to the testimony of German Perez because the prosecution failed to include Perez on their witness list. Contrary to Guzman's claim, however, the prosecution did list Perez as a witness. (*See* Lodgment No. 2, vol. 1 at 177.)

reached a verdict more favorable to the petitioner. *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003). A petitioner's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001).

In *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000), the Ninth Circuit rejected an ineffective assistance claim based on defense counsel's failure to interview or call an alibi witness when there was no evidence in the record that the witness would have testified favorably for the defense. The Ninth Circuit explained: "Dows provides no evidence that this witness would have provided helpful testimony for the defense -- i.e., Dows has not presented an affidavit from this alleged witness." *Id.* Likewise here, Guzman has not provided declarations or any other evidence to suggest that Perez's wife would have testified, much less that her testimony would have been favorable to the defense. Thus, Guzman has not shown prejudice for failure to call his landlord's wife to testify. *See id.*; *see also Alcala*, 334 F.3d at 872-73.

Guzman next argues that defense counsel was ineffective in failing to present DNA evidence and failing to challenge the results of the Sexual Abuse Response Team ("SART") forensic evaluation. (Pet. at 9, 14, ECF No. 1; *see also* Traverse at 8, ECF No. 10.) While Guzman's claim regarding DNA evidence is somewhat vague, he appears to suggest that defense counsel should have presented evidence that his DNA was not found on the victims. But this is because no DNA testing was done on the victims. Dr. Amy Young, the forensic pediatrician who examined both girls on October 31, 2011, testified that a decision was made to forego a "rape kit" at that time because it would have been traumatic for the young girls and was unlikely to yield results due the amount of time that had elapsed since the most recent incident. (Lodgment No. 1, vol. 2 at 236-37.) Thus, any alleged failure to present DNA evidence was not unreasonable because there was simply no evidence gathered to begin with. Moreover, review of the record reveals that defense counsel did question Dr. Young on the failure to collect DNA evidence when the girls first reported the assaults, on October 29, 2011. Dr. Young testified on cross-examination that

she would have recommended an immediate examination of the girls had she been contacted on October 29. (*Id.* at 260-63.) Thus, defense counsel's performance was not objectively unreasonable. For the same reason, Guzman has not established he was prejudiced by any failure to present DNA evidence or lack thereof. *See Jackson*, 211 F.3d at 1155.

Petitioner further argues that defense counsel failed to "investigate or educate himself with the SART test and talk to experts." (Pet. at 9, ECF No. 1; Traverse at 8, ECF No. 10.) He seems to suggest that defense counsel should have objected to the forensic evaluation evidence or attempted to undermine it by bringing in an outside expert. Dr. Young testified that when she examined Jane Doe 1 on October 31, 2011, Doe 1 suffered from bruising and scarring to her hymen. She opined that these findings were consistent with a history of multiple past penetrating trauma to Jane Doe 1's genitals and was consistent with sexual abuse. (Lodgment No. 1, vol. 2 at 250-53, 259-60.) Dr. Young stated that her examination of Jane Doe 2 revealed abnormal irritation and redness of her genital area. She noted that Jane Doe 2 also complained of pain during her examination. Dr. Young testified it was her opinion that Jane Doe 2's injuries were consistent with sexual abuse. (*Id.* at 239, 245-48, 258-59.) To the extent Guzman argues defense counsel should have objected to this testimony, he fails to state what the basis for such an objection should have been much less that the objection would have been sustained. The failure to make a motion or assert an objection which would not have been successful does not constitute ineffective assistance of counsel. *James*, 24 F.3d at 27.

Guzman also suggests defense counsel should have sought the assistance of an expert to evaluate the forensic evidence. "[T]he presentation of expert testimony is not necessarily an essential ingredient of a reasonably competent defense." *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995). An attorney's decision to call an expert is a matter of trial strategy. *See id.* at 834-35. Petitioner has offered nothing to suggest that an expert would have testified, what an expert witness would have said, and whether any such testimony would have supported his defense. As such, Petitioner has failed to show his

17-CV-982-CAB(WVG)

attorney's performance was deficient. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (no ineffective assistance of counsel for failing to retain expert where petitioner did not offer evidence that expert would have testified). Furthermore, any speculation by Petitioner as to what an expert would have said is insufficient to show prejudice. *See Grisby*, 130 F.3d at 373 (concluding speculation about how an expert might have testified is not enough to establish prejudice).

Moreover, Petitioner has not shown defense counsel was ineffective by not calling a defense expert to testify at trial about the SART evidence. "[T]he presentation of expert testimony is not necessarily an essential ingredient of a reasonably competent defense." *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995). An attorney's decision to call an expert is a matter of trial strategy. *See id.* at 834-35. Petitioner has offered nothing to suggest that an expert would have testified, what an expert witness would have said, and whether any such testimony would have supported his defense. As such, Petitioner has failed to show his attorney's performance was deficient. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (no ineffective assistance of counsel for failing to retain expert where petitioner did not offer evidence that expert would have testified). Furthermore, any speculation by Petitioner as to what an expert would have said is insufficient to show prejudice. *See Grisby*, 130 F.3d at 373 (concluding speculation about how an expert might have testified is not enough to establish prejudice).

In conclusion, and for the foregoing reasons, Petitioner has failed to show defense counsel's representation fell below an objective standard of reasonableness and has failed to establish that, even assuming deficient performance, there is a reasonable probability that the result would have been different. *See Strickland*, 466 U.S. at 689, 694. Accordingly, the Court **RECOMMENDS** ground one be **DENIED**.

## B. Character Evidence

In ground two, Guzman claims the trial court erred when it prevented the introduction of certain character evidence under California Evidence Code section 1102. (*See* Pet. at 16-22.) Specifically, he argues the trial court erred when it failed to allow his

17-CV-982-CAB(WVG)

daughter to testify about his character and reputation for not molesting children. (*Id.*) He contends the trial court's error deprived him of his constitutional right to present a defense and due process. (*Id.* at 22.) Respondent does not address this claim. (*See generally* P. & A. in Supp. Answer, ECF No. 7-1.)

In his petition for review to the California Supreme Court, Guzman argued that the trial court committed an error of state law in excluding his daughter's testimony about his character and reputation. (Lodgment No. 7 at 3-9.) Petitioner did not, however, argue that any purported error violated federal law. (*See id.*)

First, to the extent Petitioner challenges the trial court's interpretation of California state evidentiary rules, he fails to present a cognizable claim on federal habeas. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (finding issues regarding state law are not cognizable on federal habeas corpus review and it is not the province of the federal habeas court to re-examine state-court determinations on state-law questions).

Next, as for the federal aspect of the claim, the Court must first consider whether Petitioner exhausted the claim in state court. It is well established that a habeas petitioner must first exhaust state judicial remedies. 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988). To do so, a petitioner must present the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition. 28 U.S.C. § 2254(b), (c); *Granberry*, 481 U.S. at 133-34.

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner may indicate a federal claim by citing the source of federal law upon which he relies, or by merely labeling the claim as "federal." *Baldwin*, 541 U.S. at 32.

17-CV-982-CAB(WVG)

This Court has carefully reviewed Guzman's petition to the California Supreme Court and nowhere does Petitioner reference the U.S. Constitution, due process, the right to present a defense, or any federal case or federal law, generally. Thus, the Court finds Guzman failed to fairly present the federal aspect of claim two to the highest state court. *See id.*

Where claims have not been presented to the state's highest court, a petitioner may still satisfy the technical requirements of exhaustion if there are no longer state court remedies available to him. *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")

Here, based on California's rule barring untimely petitions for post-conviction relief, which the United States Supreme Court has found to be clearly established and consistently applied, it appears that Petitioner no longer has state court remedies available with respect to his federal claims. *See Walker v. Martin*, 562 U.S. 307, 317 (2011) (holding the California's timeliness requirement providing that a prisoner must seek habeas relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied) (citing *In re Robbins*, 18 Cal. 4th 770, 805 (1998) (holding that a habeas claim "that is substantially delayed" will not be considered unless "the petitioner can demonstrate 'good cause' for the delay.") Because any petition presented by Guzman to the California Supreme Court now, over three years after his conviction, would likely be time barred, the Court therefore finds claim two is technically exhausted. *See Cassett*, 406 F.3d at 621 n.5.

17-CV-982-CAB(WVG)

The Ninth Circuit has held that claims which are "technically exhausted" are procedurally defaulted if the procedural rule that would be imposed is independent and adequate. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). Here, however, the Court need not conduct a lengthy analysis to determine whether claim two is procedurally defaulted because it fails on the merits for the reasons discussed below. *See Lambrix v. Singletary*, 520 U.S. 518, 522-25 (1997) (holding that a federal court need not invariably resolve a state procedural bar issue first where it presents complicated issues of state law and the other issue is easily resolvable against the petitioner); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) (finding that it is proper to proceed to merits where procedural bar issue more complicated and result is the same). Because the state court has not considered the merits of a Petitioner's claim that he was denied his constitutional right to present a defense and due process, this Court reviews the claim de novo. *See Pirtle*, 313 F.3d at 1167.

The U.S. Supreme Court has consistently held that criminal defendants have a fundamental due process right, implicit in the Sixth Amendment, to present a complete defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009). This right includes the ability to call witnesses and present evidence in one's own defense. *Taylor v. Illinois*, 484 U.S. 400, 408 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This right, however, is not unlimited. Criminal defendants do not have "an absolute entitlement to introduce crucial, relevant evidence." *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996); *see also Holmes v. S. Carolina,* 547 U.S. 319, 324 (2006). Rather, the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302; *Crane*, 476 U.S. at 690. Federal habeas relief is warranted only if the exclusion of favorable defense evidence rendered the trial fundamentally unfair. *See Moses*, 555 F.3d at 757.

17-CV-982-CAB(WVG)

When evidence is excluded on the basis of a valid application of a state evidentiary rule, such exclusion may violate due process if the evidence is sufficiently reliable and crucial to the defense. *Chambers*, 410 U.S. at 302. In general, however, there must be "unusually compelling circumstances . . . to outweigh the strong state interest in administration of its trials." *Perry*, 713 F.2d 1447, 1452 (9th Cir. 1983). Indeed, states have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

In deciding whether the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, courts consider the probative value of the excluded evidence on the central issue, the reliability of the evidence, whether it is capable of evaluation by the jury, whether the evidence is cumulative, and whether it constitutes a major part of the defense. *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004) (citing *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

Here, defense counsel called Guzman's two daughters and two nieces to testify as character witnesses. The trial court permitted the defense to introduce evidence that Guzman had never molested these witnesses as children and further permitted the witnesses to testify that, in their opinion, Petitioner had a good character for both honesty and non-violence. During the testimony of the first of the four witnesses, Guzman's daughter, Amber Ramirez, the following exchange occurred:

> [DEFENSE COUNSEL]: Have you formed opinion about [Guzman's] character, the type of guy he is?
>
> [RAMIREZ]: Of course.
>
> DEFENSE COUNSEL]: What is your opinion as to his character for truthfulness?
>
> [RAMIREZ]: He's an honorable man, very truthful and upfront. He's always said things, how it is. I have never had a doubt in my mind about who he is.
>
> DEFENSE COUNSEL]: How about his character for molesting children?

17-CV-982-CAB(WVG)

[PROSECUTOR]: Objection.  Relevance.

[COURT]: Sustained.

(Lodgment No. 1, vol. 2 at 379-80.)  Defense counsel then concluded his examination of Ramirez by asking whether she had seen Guzman interact with small children.  She replied that she had seen him interact with her nieces, nephews and cousins, whom she said he watched over.  (*See id.* at 380-81.)

The trial court's exclusion of the testimony that Guzman had a reputation for not being a child molester did not violate Petitioner's constitutional rights.  First, trial court did permit a substantial amount of testimony from Guzman's daughters and nieces regarding his good character generally.  As noted above, Amber Ramirez was permitted to testify that Petitioner had never sexually abused her and that he was truthful and honorable.  (*Id.* at 379-80.)  Likewise, Guzman's other daughter, Whitney Ramirez, testified that Petitioner had never molested her as a child.  She also stated that her father was truthful and non-violent.  (*Id.* at 383-84.)  Valarie Valladares, Guzman's niece, testified that Petitioner used to visit her weekly and often would spend the night at her home.  (*Id.* at 387.)  She stated that Guzman babysat her when she was young and she had spent the night at his home.  (*Id.* at 387-88.)  She stated that, in her opinion, Petitioner was honest.  (*Id.* at 388.)  When asked if Guzman had ever touched her inappropriately when she was a small girl, she said he had not.  (*Id.* at 389.)  Lastly, Razilee Valladares, another of Guzman's nieces, testified that she recalled having contact with Petitioner when she was a little girl and that he had never touched her inappropriately.  (*Id.* at 391.)  She also testified that Petitioner always told the truth and never hurt people.  (*Id.* at 391-92.)  Thus, the jury heard a significant amount of testimony of Petitioner's good character.

Moreover, Guzman's daughter's opinion about whether he had a reputation for sexually abusing children was only tangentially probative of the central issue–whether Petitioner had sexually abused Jane Does 1 and 2.  Based on all the evidence that the court permitted regarding Guzman's good character, the trial court's decision to prevent Amber

Ramirez from testifying specifically to Guzman's character or reputation for child molestation does not amount to a constitutional violation. *See Chia*, 360 F.3d at 1004.

Finally, even assuming arguendo that the state court's exclusion of this evidence did rise to the level of constitutional error, this Court may only grant habeas relief if it finds, upon review of the record as a whole, that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (internal citation omitted); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). In other words, the error must have resulted in "actual prejudice." *Brecht*, 507 U.S. at 638.

Here, the evidence of Guzman's guilt was overwhelming. Both young victims testified explicitly regarding the sexual assaults they suffered and identified Guzman as the perpetrator. (*See* Lodgment No. 1, vol. 1 at 138-42, 163, 167-70, 173-74.) The girls' trial testimony was consistent with statements they gave to Officer Salazar on October 29, 2011, after their mother called the police. (*See* Lodgment No. 2, vol. 2 at 359-61, 366-69.) The statements were also consistent with those the girls gave during interviews with Jane Kilbourne, a social worker who interviewed Jane Doe 1 and Jane Doe 2 days after the crimes were reported. (*See id.* at 426-28, 431, 437, 447, 453, 509-10, 515-16.) Transcripts of the recorded interviews were admitted as evidence. Both girls described their abuse in detail.

Moreover, the victims' mother corroborated most of their descriptions of the molestations, as she was present for most of them. (Lodgment No. 1, vol. 1 at 276-85.) Jimenez testified that she witnessed Petitioner forcing Jane Doe 1 and Jane Doe 2 to have sexual intercourse with him. (*Id.* at 284-85.) She described the incidents in detail, and her testimony was consistent with the girls' statements and trial testimony.

In addition, Dr. Young, the forensic pediatrician who examined Jane Does 1 and 2, also corroborated the victims' testimonies. Dr. Young testified that physical examinations indicated a significant amount of trauma consistent with a history of multiple prior penetrating injuries. (*See id.*, vol. 2 at 244-45, 250-51.) While Jane Doe 1 refused to talk about the abuse specifically, she told Dr. Young that Guzman had done "bad things" to her.

(*Id.* at 249.)  Jane Doe 2 reported to Dr. Young that Petitioner had sexually abused her.  (*Id.* at 240.)

In his defense, Guzman testified at trial that he did not molest the girls and suggested that it could have been an unidentified man with whom he believed the girls' mother, Jimenez, was secretly having an affair.  His testimony was somewhat vague as to timing. He claimed that he learned of the Jimenez's infidelity from Jimenez's two year old daughter.  He testified that, based on the toddler's directions, he drove to a motel where the child told him Jimenez and the mystery man had apparently met.  He stated that the child directed him to a second floor motel room.  (*Id.* at 350-31.)  In rebuttal, the prosecution presented evidence that the motel in question did not, in fact, have a second floor.  (*Id.* at 393.)  Guzman had no explanation for why the girls would falsely testify that he was the one who molested him.

Given the wealth of evidence against Petitioner and relative weakness of Guzman's defense, any purported error in preventing Amber Ramirez from testifying that her father, in her opinion, had a reputation for not being a child molester, was not prejudicial.  Ramirez had no personal knowledge about the incidents involving the victims.  Thus, Guzman cannot establish that any such error had a substantial or injurious effect on the jury's verdict.  *See Brecht*, 507 U.S. at 638.

In sum, Petitioner has not shown his constitutional right to present a defense was violated by the exclusion of his daughter's testimony regarding his character.  *See Moses*, 555 F.3d at 757; *Chia*, 360 F.3d at 1004.  Even assuming such a violation, Guzman would not be entitled to relief because he has not shown any purported error had a substantial injurious effect on the verdict.  *See Brecht*, 507 U.S. at 638.  The Court therefore **RECOMMENDS** claim two be **DENIED.**

## C.    Request for Evidentiary Hearing

Guzman asks this Court to conduct an evidentiary hearing on his claims.  (*See* Pet. at 13, ECF No. 1.)  Petitioner does not, however, identify what evidence, if any, he intends to present.  Petitioner's request is foreclosed by the Supreme Court's decision in *Cullen v.*

*Pinholster*, 563 U.S. 170 (2011). There, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. § 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was before the state court. *Pinholster*, 563 U.S. at 181-82. The Court specifically found that the district court should not have held an evidentiary hearing regarding Pinholster's claims of ineffective assistance of counsel until after the Court determined that the petition survived review under section 2254(d)(1). *Id.*; *see also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011).

Here, for the reasons discussed in Sections V(A)-(B) of this Report and Recommendation, none of Petitioner's claims survive review under section 2254(d). The Ninth Circuit has stated that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." *Sully v. Ayers*, 725 F.3d 1057, 1075-76 (9th Cir. 2013). Accordingly, Guzman's request for an evidentiary hearing is **DENIED.**

## V.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Cathy Ann Bencivengo under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, the Court DENIES Petitioner's request for an evidentiary hearing.

In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **no later than March 30, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than April 30, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those

objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: February 21, 2018

_____
Hon. William V. Gallo
United States Magistrate Judge

17-CV-982-CAB(WVG)